## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

RABEE JASIM AL OBAIDI,
                Appellant,

        v.

DEPARTMENT OF THE NAVY,
                Agency.

DOCKET NUMBER
AT-315H-22-0097-I-1

DATE: September 22, 2022

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Rabee Jasim Al Obaidi</u>, Hanahan, South Carolina, pro se.

<u>Steven P. Hester</u>, Esquire, North Charleston, South Carolina, for the
    agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which
dismissed his appeal from his separation for lack of jurisdiction. For the reasons
discussed below, we GRANT the appellant's petition for review, REVERSE the
administrative judge's finding that the Board lacks jurisdiction over the appeal

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law. Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions. In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

because the appellant's former position was subject to a 3-year probationary period, and REMAND the case to the Atlanta Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2 The agency appointed the appellant to a position in the competitive service as an Engineer with the Naval Information Warfare Center Atlantic[2] (NIWC Atlantic), effective January 22, 2019. Initial Appeal File (IAF), Tab 1 at 8-9. On the Standard Form (SF) 50 documenting the appellant's appointment, the agency identified that it appointed him to this position pursuant to its direct hire authority and cited P.L. 103-337 as the legal authority for the appointment. *Id.* The remarks section of the appellant's SF-50 also stated that the appointment was subject to the completion of a 3-year initial probationary period beginning on January 22, 2019. *Id.* at 9. The agency issued a letter dated December 1, 2021, terminating the appellant approximately 2 years and 10 months after the January 22, 2019 effective date of his appointment. *Id.* at 10-13. The letter informed the appellant that his termination was effective that day, concluding that he failed to meet performance expectations during the course of his 3-year probationary period. *Id.* at 10.

¶3 On December 3, 2021, the appellant filed a timely appeal with the Board challenging the merits of the agency's action and alleging that it was the product of discrimination. *Id.* at 1, 6. On his appeal form, the appellant indicated that he was not serving a probationary period and that he was a permanent employee. *Id.* at 1. He also requested a hearing on his appeal. *Id.* at 2. The administrative judge issued an order informing the appellant of the limited Board appeal rights of probationary employees in the competitive service and instructing him to file

---

[2] The agency subcomponent was previously known as the Space and Naval Warfare Systems Center Atlantic (SSC Atlantic), as reflected on the appellant's appointment Standard Form (SF) 50 and the agency's termination letter. Initial Appeal File (IAF), Tab 1 at 8-10.

evidence and argument establishing a nonfrivolous allegation of Board jurisdiction over his appeal. IAF, Tab 2 at 1-5. In a subsequent order, the administrative judge noted that it appeared the agency was asserting that the appellant's position was subject to a 3-year probationary period instead of the 2-year probationary period for Department of Defense (DoD) employees set forth under the general provisions of 10 U.S.C. § 1599e. IAF, Tab 6 at 1. He nevertheless concluded that it was unclear from the record under what authority the agency extended the appellant's probationary period, and consequently ordered the agency to provide evidence of the applicable authority it was relying on to extend the appellant's probationary period to 3 years. *Id.*

¶4 The agency provided its response, IAF, Tab 7, and the administrative judge subsequently ordered the agency to provide additional information, including specific citations to the U.S. Code and the Code of Federal Regulations regarding the agency's authority to extend the appellant's probationary period, IAF, Tab 8. After reviewing the agency's second response, the administrative judge issued an order noting that it appeared that the agency had the authority to set the appellant's probationary period at 3 years and ordered the appellant to show cause as to why his appeal should not be dismissed for lack of jurisdiction based on his status as a probationer.

¶5 After the appellant failed to respond to the order, the administrative judge issued an initial decision based on the written record dismissing the appeal for lack of jurisdiction, finding that the appellant failed to nonfrivolously allege that the Board had jurisdiction over his appeal. IAF, Tab 11, Initial Decision (ID) at 1-5. Specifically, the administrative judge found that the hiring authority for the appellant's appointment permitted the agency to extend the probationary period to 3 years, and the agency terminated the appellant prior to his completion of the 3-year probationary period. ID at 3-4. Consequently, he concluded that the appellant failed to nonfrivolously allege that he was an "employee" with Board appeal rights under 5 U.S.C. § 7511(a)(1)(A), and further, absent an

otherwise appealable action, the Board lacked jurisdiction over the appellant's claim that his termination was the product of unlawful discrimination based on race.  ID at 4.

¶6   The appellant has filed a petition for review once again challenging the merits of the agency's termination decision and reasserting that his termination was the result of discrimination based on race.  Petition for Review (PFR) File, Tab 1 at 6-7.  The agency filed a response in opposition to the appellant's petition for review and the appellant has not filed a reply.  PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7   The definition of an employee with adverse action appeal rights to the Board under chapter 75 is found at 5 U.S.C. § 7511(a)(1).  *Calixto v. Department of Defense*, 120 M.S.P.R. 557, ¶ 7 (2014).  An individual appointed to a competitive service position at the DoD ordinarily qualifies as an "employee" under 5 U.S.C. § 7511(a)(1) if he is not serving a 2-year probationary or trial period under an initial appointment or he has completed 2 years of current continuous service under other than a temporary appointment limited to 2 years or less in the civilian service.  5 U.S.C. § 7511(a)(1)(A)(i)-(ii); *see* 10 U.S.C. § 1599e(a), (b)(1)(A), (d).

¶8   Despite the general provision limiting probationary periods for DoD employees to 2 years, 10 U.S.C. § 1599e(a) also notes that the "Secretary concerned may extend a probationary period under this subsection at the discretion of such Secretary."  As relevant here, the hiring authority cited for the appellant's appointment, P.L. 103-337, references DoD's authority to set up demonstration projects.  National Defense Authorization Act for Fiscal Year 1995, Pub. L. No. 103-337, 108 Stat 2663 (1994).  Additionally, 5 U.S.C. § 4703 grants broad authority to the Office of Personnel Management and an employing agency regarding how a demonstration project is conducted.  *See Redditt v. Department of the Army*, 88 M.S.P.R. 41, ¶ 8 (2001).  As the administrative judge

observed, the National Defense Authorization Act for Fiscal Year 2010 (2010 NDAA), Pub. L. No. 111-84, § 1105(a)(16), 123 Stat. 2190, 2486-87 (2009) designated the Space and Naval Warfare Systems Center, Atlantic as a science and technology reinvention laboratory (STRL), which permitted the DoD to set up demonstration projects within the NIWC Atlantic.  ID at 3-4.

¶9        In the initial decision, the administrative judge further observed that the NDAA for 2010 "designat[ed] Naval Air Warfare Center Weapons Division [(NAWCWD)] an STRL subject to the STRL demonstration project," and cited 76 Fed. Reg. 8530, 8546-47, 8559-61 (Feb. 14, 2011), for the proposition that the initial probationary period for career-conditional or career employees in the competitive service in scientific and engineering positions under the demonstration project would be extended to 3 years.  ID at 4; *see* 76 Fed. Reg. at 8546 (stating that the 1-year probationary period will be extended to 3 years for newly appointed career-conditional, career employees, and the 1-year probationary period will be extended to 3 years for newly appointed term employees classified to a job series in the Science and Engineering occupational families, among others).  He further noted that pursuant to the same Federal Register notice, provisions of 5 U.S.C. chapter 75 and 5 C.F.R. part 315, subpart H and part 752, were waived to allow a 3-year probationary period in the competitive service, consistent with 5 U.S.C. § 4703(a) and (c), and, absent veterans' preference rights, to permit termination during the probationary period without adverse action procedures.  ID at 4; *see* 76 Fed. Reg. at 8559-61. The administrative judge determined that, because it was undisputed that the appellant was a nonpreference-eligible employee serving under a career-conditional appointment to a position in the competitive service under the agency's direct hire authority within this STRL demonstration project, and the agency terminated the appellant while he was serving his 3-year probationary period, he failed to nonfrivolously allege that he was an "employee" with Board appeal rights and dismissed the appeal for lack of jurisdiction.  ID at 4.

¶10    However, the Federal Register notice the administrative judge relied on to conclude that the Secretary of the Navy extended competitive service scientific and engineering positions (including the one the appellant occupied) to 3 years instead of 2 appears to apply to a different subcomponent of the Department of the Navy than the one that formerly employed the appellant. Specifically, 76 Fed. Reg. at 8530-01 makes clear that it only applies to the Naval Air Warfare Center, Aircraft Division (NAWCAD) and the NAWCWD, identifying that these subcomponents were listed in the 2010 NDAA "as two of the newly designated STRLs," and that these two STRLs "will be the participants in the demonstration project proposal described in this Federal Register Notice." By contrast, the appellant's SF-50 and the termination letter clearly identify that his former position was within the NIWC, not the NAWCWD or NAWCAD. IAF, Tab 1 at 8, 10.

¶11    Additionally, the Federal Register notice the administrative judge relied on also includes a response to commenters suggesting that the NAWCAD/NAWCWD STRL demonstration project at issue was similar to an existing demonstration project within the National Security Personnel System. 76 Fed. Reg. at 8531. In response to the comments, the notice acknowledges that there are conceptual similarities to the NAWCD/NAWCAD STLR and other existing STLR demonstration projects, as well as the Navy Personnel Management Demonstration Project "that covered Space and Naval Warfare Systems Command (SPAWAR) organizations as well as NAWCWD for more than 25 years." *Id.* This response, drawing a distinction between the NAWCWD program and the Space and Naval Warfare Systems Command, which is the subcomponent that formerly employed the appellant, further indicates that this Federal Register notice is not applicable to the STRL demonstration project for

the appellant's agency.[3] *See* IAF, Tab 1 at 8 (Boxes 22 and 46 of the appellant's SF-50 identifying his employing department or agency as "SPAWARSYSCEN ATLANTIC" and "Space and Naval Warfare Systems Command," respectively), and 10 (termination letter identifying the appellant's employing agency as the "Space and Naval Warfare Systems Center (SPAWARSYSCEN) Atlantic").

¶12        Based on the foregoing, the record does not support the administrative judge's finding that the appellant was appointed to a position with a 3-year probationary period pursuant to the agency's direct hire authority as outlined in 10 U.S.C. § 1599e(a) and 5 U.S.C. § 4703(a).  Because the agency failed to establish that the appellant was serving in a probationary period at the time the agency separated him, and it is undisputed that he had completed at least 2 years of service at the time the agency terminated him, the appellant was an "employee" under 5 U.S.C. § 7511(a)(1)(A) with Board appeal rights under 5 U.S.C. § 7513(d), and the Board has jurisdiction over his appeal.  An agency's failure to provide a tenured public employee with an opportunity to present a response, either in person or in writing, to an appealable agency action that deprives him of his property right in his employment constitutes an abridgement of his constitutional right to minimum due process, including prior notice and an opportunity to respond.  *See, e.g.*, *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681 (1991) (holding that an appealable agency action taken without affording an appellant prior notice of the charges, an explanation of the agency's evidence, and an opportunity to respond, must be reversed because such

---

[3] We note that it appears, pursuant to 76 Fed. Reg. 1924, 1932 (Jan. 11, 2011), that candidates hired under the NWIC Atlantic/SSC Atlantic STRL demonstration project to positions classified to the Science and Engineering and Administrative Specialist/Professional occupational families serve 3-year probationary periods, while personnel assigned to positions classified to the Science and Engineering Technical/Technical and General Support occupational families serve 1-year probationary periods.  We make no findings as to whether the appellant's former position was within these job series.

action violates his constitutional right to minimum due process under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985)).

¶13      On its face, the agency's termination letter did not provide the appellant with constitutional minimum due process because he was not given advance notice and an opportunity to respond prior to his termination. IAF, Tab 7 at 13-16. Consequently, the agency's action must be reversed. *Claiborne v. Department of Veterans Affairs*, 118 M.S.P.R. 491, ¶ 8 (2012) (reversing an agency's action when the appellant was not provided with an opportunity to respond to the charges). Nevertheless, the appeal must be remanded because the appellant alleged discrimination in connection with his removal. IAF, Tab 1 at 6. He is entitled to have his discrimination claim adjudicated even though the Board has not upheld the removal. *Rivas v. U.S. Postal Service*, 62 M.S.P.R. 480, 483 (1994).

## ORDER

¶14      Accordingly, this appeal is remanded for adjudication of the appellant's discrimination claim. *See Cowart v. U.S. Postal Service*, 117 M.S.P.R. 572, ¶ 11 (2012); *Rivas*, 62 M.S.P.R. at 483.

¶15      We ORDER the agency to cancel the appellant's termination and reinstate him to his former position effective December 1, 2021. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶16      We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due,

and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶17    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶18    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶19    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.


FOR THE BOARD:                          /s/ for
                                        _____
                                        Jennifer Everling
                                        Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.